## GEORGE S. VEON v. PATRICK CREATON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF VENANGO COUNTY.

Argued October 9, 1890—Decided November 3, 1890.
[To be reported.]

(a) A father incurred expenditures of money and loss of time, in and about the nursing, care and cure of his unmarried adult son, who, while not sustaining a family relation or that of a servant to his father, had received personal injuries in consequence of the furnishing to him of intoxicating drinks, in violation of § 3, act of May 8, 1854, P. L. 663:

1. The father was not a person "aggrieved" by the unlawful furnishing of liquors to the son, within the meaning of § 3 of said act, so as to have a right of action for such expenditures and loss of time; nor could he found a right of recovery, under the act, upon the ground that the son's injury increased the probability of the father ultimately becoming liable for his support under the poor laws.

2. The fact that the son regarded his father's house as his home, occasionally spent some time there, paying board, and contributed part of his earnings to the father in return for the cost of his education, is not sufficient evidence of a subsisting family relation; what the effect of such a relation, continued from the time of the son's arrival at age to the time of the injury, would have been, not decided.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 96 October Term 1890, Sup. Ct.; court below, No. 71 August Term 1889, C. P.

On July 25, 1889, George S. Veon brought trespass against Patrick Creaton, under § 3, act of May 8, 1854, P. L. 663, to recover damages for an alleged furnishing by the defendant of intoxicating liquors to the plaintiff's son, when intoxicated. Issue.

At the trial on March 6, 1890, the following facts were shown:

The plaintiff resided at Beaver Falls, in Beaver county. His son, Myron H. Veon, who was about twenty-five years of age and unmarried, had no other home than the plaintiff's house, but during the greater part of his time was away there-

Statement of Facts.

from, following the occupation of a teacher of music. While at home the son paid board to the plaintiff. He also gave the plaintiff money at different times, in return for what had been spent on his education. The plaintiff testified that the sums so given to him by his son in 1888 and 1889, amounted to about $200 per year.

About July 1, 1889, Myron H. Veon left his father's house, and started on a tour. He arrived at Franklin, Venango county, on July 4th, and remained there, with a young man named Shannon, until the afternoon of the next day, when he and Shannon left Franklin by the Allegheny Valley railroad for Emlenton, in company with a young woman known as Isabel Silver. On arriving at Emlenton, shortly before seven o'clock, the three went together to the hotel of the defendant. Testimony for the plaintiff tended to prove that the young men were then visibly intoxicated from the drinking of liquors at Franklin and on the train; that beer was furnished to the party by the defendant's son and with the knowledge of the defendant in the parlor of the hotel, and all three drank there four or five times; that afterwards the young men went to the hotel bar and drank whiskey furnished to them there, after the young woman had told the defendant's son not to give them any more liquors. Testimony for the defendant tended to show that no liquors were furnished either to the plaintiff's son or to his companions, at the defendant's hotel, but that all their requests therefor were refused.

About nine o'clock, the young woman went away, leaving the young men at the hotel. After her departure they were refused drink at the bar, and were made to leave the hotel. Then they wandered about the town from place to place, drinking from time to time from a bottle of whiskey they had with them, and, toward midnight while in search of a lodging place, they got upon the railroad track, and in consequence of their intoxicated condition were struck by a passenger train. Shannon was killed, and Veon so injured that the amputation of one leg and a part of the foot of the other became necessary. On learning of the injury to his son, the plaintiff went to Emlenton, took charge of him, procured surgical and other attendance, and afterwards, when he became able to travel, took him to his home. In thus caring for his son, the plaintiff

Charge of Court below.

incurred large expenses, and lost a great deal of time from his business as a real estate agent.

At the close of the testimony, the court, TAYLOR, P. J., charged the jury in part as follows:

Now, under the act of assembly, the plaintiff says that he was aggrieved by that injury; in other words, that he sustained damages by reason of it, and he has brought this action to recover the damages which he alleges he has sustained by reason of that alleged injury. In order that he may recover there are several things necessary. They must satisfy you from the weight of the evidence which you deem credible, first, that the defendant furnished the injured party with intoxicating drinks; second, that, at the time of such alleged furnishing, the party injured was visibly intoxicated; third, that by reason of such alleged furnishing, the alleged injury was actually sustained. All those things must concur in order that the plaintiff may recover in this action. . . . .

[If you find for the plaintiff, you will find his actual expenses which he has paid out in physicians' bills, nurses' bills, time lost, and all those items that we have allowed to be given in evidence here, as to the actual amount paid out, rendered necessary by reason of this injury.] [5]

[We will say to you, gentlemen, upon another question, that if the plaintiff's son was living at home and furnished money or labor towards the support of the family, the plaintiff may also recover such sum as a reasonable expectation of the son's future earnings would warrant. But, upon this question, we say to you that in our opinion there is no evidence here which would warrant you in finding such a family relation existing at the time of the injury as would warrant a recovery for that. But it is entirely for you. We do not take it from you, but in our opinion there is not such evidence of a family relation as would warrant the jury finding anything for the plaintiff upon that.] [5] If you find for the defendant, you find simply for the defendant.

Our answers to the points will now dispose of the case.

The plaintiff requests us to charge:

1. If the jury find from the evidence that the defendant by himself or by his servants furnished intoxicating liquors to the

Charge of Court below.

son of the plaintiff when he was visibly intoxicated, such sale was unlawful; and if from such intoxicating drinks the young man was injured, the defendant is liable to the plaintiff for the injury actually sustained by him by reason of the injury to his son resulting by reason of his intoxication.

Answer: Affirmed.[6]

2. If the jury find from the evidence that the plaintiff is the father of the young man injured, and that the son was unmarried; that his home was with his father, the plaintiff, and that the family relation at the time of the alleged injury existed; that the son, prior to the injury alleged, contributed to the support and maintenance of his father's family, and that the plaintiff had reasonable expectation that the son would continue such assistance, he is entitled to recover the value of such reasonable expectation of the continuance of such assistance.

Answer: Affirmed.[6]

3. If the jury find from the evidence that intoxicating liquors were furnished to the son of the plaintiff, when intoxicated, and that by reason of such intoxication the son wandered upon the railroad and was struck by a passing train, and by reason of such intoxication sustained the injuries proved, the defendant is liable and the plaintiff is entitled to recover for his actual expenses incurred by reason of such injury to his son, including medical attendance and nursing, together with his necessary loss of time.

Answer: Affirmed.[6]

Defendant requests the court to give binding instructions to the jury to find for the defendant for the reasons:

1. Penal statutes, and those in derogation of the common law, must be strictly construed. The act of May 8, 1854, under which this suit is brought, is a penal statute and must be strictly construed. There is nothing to warrant the conclusion that the legislature intended the father and son should each have an action arising from the same injury, nor that double damages should be given for the same injury. The son undoubtedly has a right of action for everything claimed in the suit at hand, and in case of suit by the son the court must allow either double damages, or allow him to recover what the father does not. Such a thing was certainly never contemplated.

Arguments.

Answer: Answered in the negative.[7]

2. If the plaintiff could recover at all, the son being twenty-five years of age, it would be because of the existence of the family relation still being maintained, evidenced by assistance in money, etc., from the son towards the support of his father's family. It appearing from the evidence of the plaintiff himself that the son had been at home now and then, but had paid his board, and that the money his son had given him was in repayment of large sums of money paid out in the son's education, then, instead of showing the existence of a family relation, it establishes the relation of debtor and creditor, and under the decisions the plaintiff cannot recover.

Answer: If the facts assumed in this point are found to be true, the plaintiff could not recover for any alleged injury arising from loss of future service or earnings, but could recover for damages, as explained in the charge.[7]

3. The jury must be satisfied, from the preponderance of the evidence on the part of the plaintiff, that the defendant furnished intoxicating drinks to the plaintiff's son, or knowingly permitted it to be done, when visibly intoxicated, and by reason of such furnishing he received the injury complained of, if the court decides he can recover at all, or their verdict shall be for the defendant.

Answer: Affirmed.

4. Under all the evidence, the plaintiff cannot recover.

Answer: We submit this to the jury.[7]

—The jury returned a verdict for the plaintiff for $1,784.25. The plaintiff having released $384.25 of the verdict, a rule for a new trial was discharged and judgment entered in the plaintiff's favor for $1,400; whereupon the defendant took this appeal, assigning for error, inter alia:

5. The parts of the charge embraced in [ ][5]

6. The answers to plaintiff's points.[6]

7. The answers to defendant's points.[7]

*Mr. R. W. Dunn* (with him *Mr. J. S. Carmichael* and *Mr. S. B. Myers*), for the appellant:

1. At common law, neither parent had authority to sue for the maiming of an adult child. A father may sue for such an injury to a minor child, because he is entitled to the child's

services, but a mother may not: Fairmount Ry. Co. v. Stutler, 54 Pa. 375; Penna. R. Co. v. Bantom, 54 Pa. 497. A father sustains the same relation toward an adult child that a mother does toward a minor, and he is not entitled to sue for an injury to the adult, unless the relation of master and servant exists or the child dies from the injury, in the latter case another basis for the action being introduced by statute. In order that any one, other than the party injured, may bring suit under the acts of April 15, 1851, P. L. 674, and April 26, 1855, P. L. 309, death must ensue. An adult receiving an injury has the right, under both the common and the statute law, to sue in his own name for his personal injuries, and recover all damages arising therefrom, including the expenses of his care and cure, and no one else can assume this right even with his consent: Cleveland etc. R. Co. v. Rowan, 66 Pa. 400; 2 Addison on Torts, §§ 830, 1293. His father, after bearing such expenses, cannot sue for and recover them: 2 Addison on Torts, § 1273.

2. The plaintiff cannot maintain this suit by reason of a relation of master and servant, as such relation was dissolved when his son reached full age and there has been no contract re-establishing it. Nor can he recover by reason of the possibility that the son may become a charge upon him or upon the public: Fairmount Ry. Co. v. Stutler, 54 Pa. 375; 2 Addison on Torts, § 1274. He can recover under the act of May 8, 1854, P. L. 663, only if injured in person or property. Wherein has the father's person or property been injured? The expenses he incurred were voluntarily assumed and paid by him. Even a liberal construction of the act does not justify holding that by such voluntary act he became a person aggrieved. But the statute is penal in every section and should be construed strictly: McMullin v. McCreary, 54 Pa. 230; Moyer v. Slate Co., 71 Pa. 297; Endlich on Statutes, 174–176. The existence of a family relation does not authorize the plaintiff's recovery; family relation comes to the relief of a plaintiff only when the injury causes death: Penna. R. Co. v. Adams, 55 Pa. 499; Penna. R. Co. v. Keller, 67 Pa. 300. The testimony falls far short, however, of establishing a family relation, showing nothing more than the relation of debtor and creditor, and it was plain error to submit the case to the jury: Pittsb. etc. R. Co. v. Gazzam, 32 Pa. 340.

Opinion of the Court.

*Mr. J. H. Osmer*, for the appellee :

1. The plaintiff was aggrieved within the meaning of § 3, act of May 8, 1854, P. L. 663. The act does not require that the unlawful act of the defendant should result in death, to authorize such an action. The whole tenor of the act is otherwise. The plaintiff not only has been subjected to great expense and loss of time, but has also had his just and reasonable expectations of further pecuniary aid from his son lessened if not destroyed, and he has thus received an injury which will sustain the action : Penna. R. Co. v. Adams, 55 Pa. 499 ; Fink v. Garman, 40 Pa. 95 ; Penna. R. Co. v. Keller, 67 Pa. 300 ; North Penna. R. Co. v. Kirk, 90 Pa. 15. Fairmount Ry. Co. v. Stutler, 54 Pa. 375, does not touch any question now before the court. It was decided on the ground that a mother was not entitled to the services of her minor child, and, further, that the injury in that case was the result of a breach of a contract to which the mother was not a party. Under the act of 1854, a right of action is given to all persons aggrieved.

2. The discrepancies that exist under the act of April 26, 1855, P. L. 309, as pointed out in Penna. R. Co. v. Bantom, 54 Pa. 495, have no place in the act of 1854. The courts have neither power nor disposition to thwart the humane purpose of the statute by glosses and refinements : Fink v. Garman, 40 Pa. 95 ; Taylor v. Wright, 126 Pa. 617. In this case the jury were restricted to actual pecuniary loss in money paid, time lost, etc. While the question of expectations of future assistance from the son was submitted, this was done with such caution and adverse comment that the submission was of little benefit to the plaintiff. And after the trial the court reduced the damages so as to conform to the opinion expressed in the charge. The instructions as to the measure of damages are supported by Fink v. Garman, 40 Pa. 95. If the jury did exceed the boundary of sound discretion in assessing damages, they erred through no fault of the court, and their error cannot be corrected : Oakland Ry. Co. v. Fielding, 48 Pa. 320.

OPINION, MR. JUSTICE CLARK :

A brief reference to the facts of this case will aid in the determination of the questions of law involved.

Myron H. Veon, the plaintiff's son, in company with one

Opinion of the Court.

Shannon and a young woman named Isabel Silver, on the evening of July 5, 1889, took the train on the Allegheny Valley railroad at Franklin, and arrived at Emlenton about 7 o'clock on the evening of the same day. They went from the depot directly to the hotel of Patrick Creaton, the defendant. It was alleged at the trial that they had been drinking intoxicating liquors at Franklin; that they had whiskey with them, and that when they came to the defendant's hotel in Emlenton, Veon was drunk, or intoxicated to such an extent that his condition was obvious and apparent to all who saw him; that Veon and Shannon remained for several hours at the hotel, and during their stay there and whilst Veon was in this drunken state, the defendant furnished him intoxicating drinks, both beer and whiskey, and finally, about 10 or 11 o'clock, ordered him from the house. About 11 o'clock of the same night, Veon, in company with Shannon, after leaving the hotel, got upon the tracks of the Allegheny Valley railroad, and were struck by the north-bound passenger train a few yards distant from the hotel: Shannon was killed, and Veon so injured as to necessitate the amputation of one leg, and part of the foot of the other leg. His father, the plaintiff, took charge of his son at Emlenton, procured the necessary surgical and medical aid, and afterwards removed him to his own home, where he was nursed and cared for until his wounds were healed. The father thereupon brought this suit, alleging that he is aggrieved by the act of the defendant, and claiming to recover damages for the injuries sustained.

The verdict of the jury establishes the fact that the defendant, on the occasion referred to, did furnish intoxicating liquors to the plaintiff's son, when he was in a state of visible intoxication; and that by reason thereof the personal injuries to the son were sustained, which are set up by the plaintiff as the ground of his recovery in this case. The act of May 8, 1854, P. L. 663, in the first section, provides that " the wilful furnishing of intoxicating drinks, as a beverage, to any person, when drunk or intoxicated, shall be deemed a misdemeanor, punishable," etc.; and, in the third section as follows: " Any person furnishing intoxicating drinks to any other person, in violation of any existing law, or of the provisions of this act, shall be held civilly responsible for any injury to person or property in

consequence of such furnishing, and any one aggrieved may recover full damages against such persons so furnishing, by an action on the case." The only question, therefore, for the determination of this court is, whether or not George S. Veon, the plaintiff, who is the father of Myron H. Veon, is a person "aggrieved," or is a person who has sustained an injury to person or property, in consequence of the defendant's criminal act, within the meaning of this section of the act of 1854.

As by the words of the act the defendant is only responsible civilly " for any injury to person or property " in consequence of his unlawful act, a person " aggrieved " must necessarily be one who has suffered " an injury to person or property." The term " property " has not been construed in its strict or literal sense, however ; it has been held to embrace the pecuniary interest which a wife has in the life of her husband, and therefore a widow is entitled to recover for the death of her husband: Fink v. Garman, 40 Pa. 95. But, even the widow has no right of action, either at the common law or by the statute, except for injuries to her person or her property, or for her husband's death, and under some circumstances, perhaps, for the death of a child. The reason for this is obvious. During the lifetime of the husband, the right of action is in him, for injuries to his person or his property, and a recovery by both husband and wife, in separate suits for the same cause of action, was of course never contemplated.

Myron H. Veon was twenty-five years of age, and sui juris ; and if there is any right of recovery for these alleged injuries, in consequence of the defendant's wrongful act, it would seem to be in the son, and not in the father. If the son had been a minor, his father might, perhaps, have sustained a suit for the loss of his services ; or, if the son's death had ensued as a result of his injuries, and it was shown that although the son was sui juris, the family relation still subsisted, the father might have recovered damages for his death under the act of 1855 ; for, in either case, he might be regarded as a person aggrieved within the meaning of the act of 1854. So, also, if the son, whilst in this state of intoxication, in consequence of the liquors furnished him by the defendant, had assaulted his father and inflicted personal injuries upon him, or had applied the torch to his father's house, or had mutilated or destroyed

his father's property, then the father, being one aggrieved, might have sustained a suit for the injuries suffered. When a minor child has been injured through negligence, a suit may lie in his own right, and another in the right of the father, and both be maintained, for the claim, in each case, is entirely distinct; in the former, damages for the personal injuries received, in the latter, damages per quod servitium amisit, medical attendance, etc. Where, after suit brought, the infant dies in consequence of the injury, the action will not abate, but will survive to his personal representatives; and, by reason of the death, a right of action may also accrue to the parent. There may, in such case, be a recovery in both suits, for the appropriate or proper damage sustained by the son and by the parent respectively. In all these supposed cases I speak for myself only, by way of argument or illustration merely; no such case exists here, and of course what is said in this connection is not authority in any other case.

But, in the case at bar, neither the infancy nor the death of the son forms any portion of the plaintiff's claim; nor was any relation of master and servant shown to exist. It is unnecessary to discuss the effect of a subsisting family relation, if that relation had been shown to have continued from the time of the son's arrival at age to the time of the injury. There was no evidence to this effect; no evidence to justify any reasonable inference of the fact, and it was error to submit the question to the jury. The plaintiff was allowed to recover, not for injuries to his person or his property, or for any pecuniary loss he suffered in the death of his son, but for money which he voluntarily paid, laid out, and expended in relief of his son, for surgical skill, medical attendance, nursing, time lost, and traveling expenses incurred during his son's illness, and during the period of his restoration from the effects of his injuries.

Nor can the plaintiff found a right of recovery upon his contingent liability for his son's support under the poor-laws. The injuries sustained through the defendant's negligence and wrong may increase the probabilities of the son's becoming chargeable under the statute, and of the father's ultimate liability for his support, but no liability has yet attached, and non constat that any such liability ever will attach; the contin-

gency is therefore too remote : Fairmount Ry. Co. v. Stutler, 54 Pa. 378; 2 Addison on Torts, § 1274.

The judgment is reversed.

