## Bradermann v. Pennsylvania Securities Commission.

*Sterling G. McNees* and *Robert F. Irwin, Jr.,* for plaintiff.
*Michael E. Stroup,* Deputy Attorney General, for defendant.

WICKERSHAM, J., July 14, 1930.—This is an appeal by the plaintiff from the decision of the Pennsylvania Securities Commission refusing to register him as an "agent or salesman" of Otis & Co. After hearing the testimony of the plaintiff, the commission, on February 5, 1930, notified Otis & Co. as follows:

"You are hereby notified that at a meeting of the Pennsylvania Securities Commission held this day, your application for the registration of Merwin-Wolff Bradermann as your agent or salesman was refused because the commission is unable to find satisfactory evidence of his good repute, fitness and qualifications."

Thereafter, on request of Otis & Co., the commission, in accordance with section eight of the Securities Act, held a further hearing and heard addi-

tional testimony. Thereafter, on March 14, 1930, the commission adopted the following resolution, notice of which was sent to Otis & Co.:

"Whereas, a registration having been refused and hearing held at the request of the applicant, in accordance with the provisions of section 8 of the Securities Act, and the commission having found after full and due consideration that the evidence submitted does not justify or warrant a reversal or modification of its previous findings of fact whereby the application of Otis & Company for the registration of Merwin-Wolff Bradermann as its agent or salesman was refused because the commission was unable to find satisfactory evidence of his good repute, fitness and qualification,

"Therefore, it is ordered that the former order of the commission be affirmed and the application of Otis & Company for the registration of Merwin-Wolff Bradermann as its agent or salesman be and is hereby refused."

From the said final order of the commission this appeal was taken.

We find two questions involved in the appeal:

1. Where a dealer's application for registration of a salesman is refused by the Securities Commission, and the dealer refuses to appeal, may the salesman do so?

2. If this petition may be determined on its merits, should the Securities Commission be reversed?

We think the first question must be answered in the affirmative. It appears from the record that Otis & Co. notified the Pennsylvania Securities Commission that the plaintiff, Merwin-Wolff Bradermann, had been appointed as agent or salesman for the said applicant. Accompanying the application and making a part thereof, in compliance with section ten of the Securities Act of 1927, was the sworn statement of the said agent. An examination of this "sworn statement" shows that, in the form thereof, it was evidently prepared by the Securities Commission. The said plaintiff, Merwin-Wolff Bradermann, answered the questions contained in the said form entitled "Statement of Agent or Salesman," to which he signed his name on the line over the printed words "Applicant for Registration as Agent or Salesman." It was also sworn to by him. He now claims the right to appeal from the said final refusal of the Securities Commission so to register him, as an "aggrieved person" under section nineteen of the Securities Act of 1927, which provides, *inter alia:*

"Any dealer, salesman or agent aggrieved by any decision of the commission may file, within thirty days thereafter, in the Court of Common Pleas of Daphin County, a petition against the commission, officially as defendant, alleging therein, in brief detail, the action and decision complained of and praying for a reversal thereof, . . ."

Is an agent or salesman "aggrieved" by the refusal of the defendant commission to so register him? We think he is.

The word "aggrieved" is defined in Webster's New International Dictionary to be: "adversely affected in respect of legal rights; suffering from an infringement or denial of legal rights." An "aggrieved party" or person is one who is injured in a legal sense; who has suffered an injury to person or property: Veon *v.* Creaton, 138 Pa. 48, 56; 2 C. J. 973. It is said, with reference to the right of appeal, that a person aggrieved is one whose pecuniary interest is directly affected by the adjudication: Andress *v.* Andress, 46 N. J. Eq. 528, 22 Atl. 124; Wiggin *v.* Swett, 6 Metc. (Mass.) 194, 39 Am. Dec. 716; State of Vermont *v.* Central Vermont R. R. Co., 81 Vt. 459, 21 L. R. A. (N. S.) 949. And in Switzer *v.* Switzer et al. (Supreme Court of Missouri), 98 S. W. 461, 463, it was said by Fox, J.:

". . . Every person aggrieved includes every person whose rights are in any respect concluded by the judgment. . . . Furthermore, it is right and just that any person whose interests are injuriously affected and concluded by a judgment should have the right to review by the appellate court of the proceedings which resulted in such judgment."

And in McKenna *v.* McKenna (Supreme Court of Rhode Island), 69 Atl. 844, 845, it was said by Johnson, J., quoting from Tillinghast *v.* Brown University, 24 R. I. 179, 183:

". . . The rule generally adopted in construing statutes on this subject is that a party is aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest: 2 Cyc. 633. The word 'aggrieved' refers to a substantial grievance; a denial of some personal or property right, or the imposition upon a party of a burden or obligation," citing many authorities, among them Lewis *v.* Bolitho, 6 Gray (Mass.) 137; Lawless *v.* Reagan, 128 Mass. 592, and others. In New Jersey Building, Loan and Investment Co. *v.* Lord et al., 58 Atl. 185, 187, it was said by Green, J., writing the opinion of the court:

". . . A defendant is truly aggrieved only when, by appropriate pleadings or pleadings and proofs, he has become an active party to an issue or a controversy which is adjudged against him," citing many authorities.

Applying these well-established definitions of the term "aggrieved," used in section nineteen of said Securities Act of 1927, to the facts, it appears that the plaintiff was very much a party to the proceedings had before the commission. As we have heretofore suggested, he signed the sworn statement or questionnaire submitted to him by the commission, and under his signature were printed the words "Applicant for Registration as Agent or Salesman." Was he a party to the proceeding? Certainly he was. It was the plaintiff who was called before the commission to testify—see notes of testimony, pages 3 to 16, both inclusive—at which time the commission probed deeply into his prior business and his business failures. Again, on request of Otis & Co., after a rather lengthy statement on the part of counsel for the plaintiff, he was again interrogated—see notes of testimony, page 26, *et seq.*—and was carefully examined by his counsel and members of the commission. It cannot, therefore, be said that he is not a party to this record.

Was he an interested party? He has testified that he sought employment as a salesman with Otis & Co. in order that he might make or win a livelihood. He claims to be an experienced salesman of securities. The order of the commission deprives him of the right to earn a livelihood in that way in Pennsylvania. Evidently, therefore, he was an interested party to the proceeding. Was he aggrieved? We think he was, because the final order of the commission deprives him of the right so to earn a livelihood; it takes away from him the legal right to act as an agent or salesman of securities.

The plaintiff has no vested right to sell securities as an agent until he is registered so to do by the Pennsylvania Securities Commission: Rubin *v.* Pennsylvania Securities Commission, 33 Dauph. 205, 209. Prior to the passage of the Securities Act of 1923, an agent or salesman could sell securities without interference on the part of the state; but since the passage of the Securities Act of 1923 and the amendatory Act of 1927, one desiring to sell securities must possess and prove qualifications so to do satisfactory to the commission. This, however, does not deprive him of the right to appeal to the Court of Common Pleas of Dauphin County if he feels that he is aggrieved by an order of the commission refusing to register him as such.

It is very clear that the terms "dealer," "salesman" and "agent" are all used in the ordinary acceptation of those words. Therefore, when the act provides that a salesman or agent aggrieved by any decision of the commission may file a petition for the reversal of an order of the Securities Commission, it in no wise restricts such right to a registered salesman or agent.

There does not appear to be any ambiguity in the provisions of section nineteen of the act. If it was the intention of the legislature that only the principal was aggrieved by the failure of the commission to register its appointee, or if it had been the intent of the legislature that a salesman or agent could appeal only when his commission was revoked, as provided in section seventeen of the act, it could have so provided in the act. No such provision was written into the Securities Act by the legislature. It is very clear to us, therefore, that it was the intention of the legislature that not only the "dealer" was aggrieved by the action of the commission in refusing to register its appointee as its "salesman or agent," but the "salesman or agent" is also aggrieved if the commission refuses to register him on the application of the dealer. No other construction of section nineteen of the act would be logical or justified. We are of the opinion that when the commission refuses to register an agent on application of a dealer, not only is the "dealer" aggrieved, but the "salesman or agent" also is aggrieved, and has a right to appeal under section nineteen. We cannot, therefore, agree with the contention of the learned Deputy Attorney General that the "salesman or agent" is not a party to the record and has no right to appeal from the decision of the commission refusing to so register him.

The second question involved in this appeal must be answered in the negative. Section ten of said act provides, *inter alia*, that:

"Upon written application by a registered dealer, and upon satisfactory evidence as to good repute, fitness and qualifications, the commission shall register, as agents or salesmen of such dealers, such persons as the dealer may request. . . ."

We think the burden of satisfying the commission as to the good repute, fitness and qualifications of the plaintiff was upon him. The commission has found that he has not met that burden. He has not supplied satisfactory evidence as to his good repute, fitness and qualifications.

Our duty, under the statute, is to determine whether there is evidence to sustain the finding of the commission and our duty ends there. To illustrate: If a case were presented showing that an agent had an unquestionable reputation for integrity and business dealing from which no possible inference of the lack of good repute, fitness and qualification could be drawn, and the commission had determined that the agent had not submitted satisfactory evidence as to these matters, it would be our plain duty to reverse the commission. If, on the other hand, an agent had not presented the commission with any evidence, the burden being on him to show that he is fitted in these respects to become an agent, it would be our plain duty to sustain the commission. It follows, also, that where an agent has presented evidence from which inferences may be drawn either way, it is our duty to support and sustain the commission whichever way it happens to have drawn the inferences and found the facts.

We have read the evidence produced before the commission by the plaintiff and are satisfied with the conclusions reached by the commission, and its order refusing to register the plaintiff as an agent or salesman in securities is affirmed. The petition of the plaintiff is dismissed, at the cost of the plaintiff.

From Homer L. Kreider, Harrisburg, Pa.