GUITAR v BIENIEK

1. INTOXICATING LIQUORS—STATUTES—DRAMSHOP ACT—CONSTRUCTION.

The dramshop act is remedial in nature and it should be construed liberally (MCLA 436.22; MSA 18.993).

2. INTOXICATING LIQUORS—STATUTES—DRAMSHOP ACT—APPLICATION.

Application of the dramshop statute is limited to unlawful transactions, i.e., selling, giving or furnishing alcohol to a visibly intoxicated person (MCLA 436.22; MSA 18.993).

3. INTOXICATING LIQUORS—STATUTES—DRAMSHOP ACT—PERSONS CONTEMPLATED.

All "persons" who actively participate in providing alcoholic beverages for a commercial remuneration are encompassed in a proper liberal construction of the dramshop act.

Appeal from Macomb, Walter P. Cynar, J. Submitted November 12, 1975, at Lansing. (Docket Nos. 23344, 23409, 23377, 23436.) Decided December 3, 1975. Leave to appeal applied for.

Complaints by Jacqueline L. Guitar, administratrix of the estate of James D. Guitar, deceased, George L. Giasson, Sr., for himself and as administrator of the estate of George L. Giasson, Jr., deceased, Lorell Giasson, Fred Victory, for himself and as administrator of the estate of Shelly D. Victory, deceased, Rick Victory, a minor, by his next friend, Fred Victory, and Robert and Wilbert

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors § 562.
What constitutes "injury in person or property" within civil damage or dram shop act. 6 ALR2d 798.
[2] 45 Am Jur 2d, Intoxicating Liquors §§ 566–571, 575–581.
[3] 45 Am Jur 2d, Intoxicating Liquors § 594.

Frohriep against Patrick A. and Lillian Bieniek, Alcamo's Holiday House and Alcamo's Hall, Inc., for damages for injuries resulting from an automobile accident and for damages under the dramshop act. Summary judgment for defendants Alcamo's Holiday House and Alcamo's Hall, Inc. Plaintiffs appeal. Reversed and remanded for trial.

*LaBarge, Zatkoff & Dinning,* for plaintiff Guitar.

*Stewart, O'Reilly, Cornell, Donovan, Lascoe & Rancilio, P. C.,* for plaintiffs Giasson.

*Swartz & Juneau,* for plaintiffs Frohriep.

*Donald Z. Ricard* (by *William P. Greenway),* for plaintiffs Victory.

*Glime, Daoust & Wilds (Herbert J. Rusing* and *Denis R. LeDuc,* of counsel), for defendants Alcamo's Holiday House and Alcamo's Hall, Inc.

· Before: QUINN, P. J., and R. B. BURNS and D. E. HOLBROOK, JR., JJ.

R. B. BURNS, J. Plaintiffs appeal from a summary judgment of dismissal entered on behalf of defendants Alcamo's Holiday House and Alcamo's Hall, Inc. We reverse.

Alcamo's Holiday House is a rental hall located in Mount Clemens, Michigan. On the evening of June 11, 1971, a private wedding reception was held at the hall. Defendants Patrick and Lillian Bieniek were guests at the reception, and Patrick Bieniek consumed a certain amount of alcoholic beverages at the reception. It was after leaving the reception that Bieniek, in the early morning hours of June 12, drove his automobile broadside into another resulting in the deaths of the respective

plaintiffs' three decedents and the serious injury to plaintiff Frohriep.

The lease of the hall provided that alcoholic beverages were not to be sold on the premises unless the necessary licenses were obtained by the lessees. The alcoholic beverages consumed at the reception were privately provided by the celebrants, with the exception of keg beer that was obtained through Alcamo's at retail cost plus a fee for handling, tapping and setting up the keg. Alcamo's provided a waiter to dispense the beverages at the reception.

Plaintiffs contend that Alcamo's falls within the class of "persons"[1] contemplated as liable under the "dramshop" act, MCLA 436.22; MSA 18.993. The specific applicability of this statute to rental halls is a question of first impression.

Three opinions of this Court have considered the general applicability of the dramshop act. *LeGault v Klebba,* 7 Mich App 640, 643; 152 NW2d 712, 713 (1967), found that "[i]t is not the law that private individuals are liable for the actions of their social guests who over-indulge in the liquid hospitality provided at private home or parties". *Behnke v Pierson,* 21 Mich App 219, 220; 175 NW2d 303 (1970), cited *LeGault* and observed that "[t]he general rule is that furnishing liquor without gain on social occasions creates no right of action against the host. 8 ALR3d 1413, § 2".

In *Lover v Sampson,* 44 Mich App 173; 205 NW2d 69 (1972), the Court undertook a more ambitious analysis. It found (p 178) "no authority which holds the dramshop act applicable to private individuals who are not tavern owners". Further (p 180):

---

[1] The word "person" is defined in the liquor control act as "any person, firm, partnership, association or corporation". MCLA 436.2k; MSA 18.972(11).

"[T]he word 'person' contained in the phrase 'person who shall by such selling or giving' refers to any person, firm, partnership, association, or corporation engaged in the business of selling alcoholic beverages."

And finally, in passing (p 181), "the dramshop act only applies to commercial vendors of alcoholic beverages".

However, *Lover v Sampson* was decided on other grounds. The Court reversed an accelerated judgment because it disagreed that "handing a can of beer to the driver of an automobile while it was in motion could not be the proximate cause of a motor-vehicle collision". *Lover, supra,* 183. The Court in *Lover* held two statutes other than the dramshop act, *i.e.,* MCLA 750.141a; MSA 28.336(1), and MCLA 436.34; MSA 18.1005, to provide the basis for the plaintiffs' cause of action therein. Thus, the *Lover* Court's appropriate concern with the dramshop act was limited to a determination that the statute did not apply. We must view any statement in *Lover* that the statute is necessarily limited in application to tavern owners as an unfortunate and gratuitous dictum.

*LeGault v Klebba,* supra, correctly noted that (p 643):

"At common law, there was no action available against those who sold intoxicants to a person who later caused injury. * * * In Michigan, recovery for such injury caused by an intoxicated person is exclusively statutory."

It is the choice of the proper theory of statutory construction to apply to the dramshop act which will largely dictate our disposition of this case.

*LeGault, supra,* stated that (p 643) "though remedial, the statute must be strictly construed", citing the identical language of *Holland v̇ Eaton,*

373 Mich 34, 39; 127 NW2d 892, 895 (1964). Yet other pronouncements of the Supreme Court both prior to and since this terse statement of *Holland* disagree. In *LaBlue v Specker,* 358 Mich 558, 575; 100 NW2d 445, 454 (1960), the Court cited with approval from a treatise:

> "In 30 Am Jur, Intoxicating Liquors, § 526, p 825, is found the following:
> " 'While it has been said that civil damage or dramshop acts are penal in character and should, according to well-understood canons, be strictly construed, the better view is that they are remedial in character and should be beneficially construed so as to suppress the mischief and advance the remedy.' "

Similarly, in the recent case of *Podbielski v Argyle Bowl, Inc,* 392 Mich 380, 384–385; 220 NW2d 397, 399 (1974):

> "Likewise, '[t]his Court has always construed this statute liberally, and has not deemed that the true legislative intent was to be ascertained by any strained or narrow construction of the words employed.' *Eddy v Courtwright,* 91 Mich 264, 267; 51 NW 887 (1892)."

In *Barton v Benedict,* 39 Mich App 517, 521; 197 NW2d 898, 901 (1972), our Court has concurred: "Since the dramshop act is remedial in nature, it should be construed liberally to meet those ends".

We believe that adherence to a strict construction of the dramshop act derives from a misconception of the purpose of the statute:

> "[T]he Liquor Control Act, of which the dramshop act is part, was intended to regulate the commercial manufacture, importation, possession, transportation, and sale of alcoholic beverages. In short, it was intended to

regulate those in the business of manufacturing and distributing alcoholic beverages." *Lover, supra,* 179–180.

While commercial regulation of the liquor industry may be seen to be an overriding purpose of the larger liquor control act, it is clearly *not* the purpose of MCLA 436.22—a section which obviously represents the legislative intention of "reducing highway carnage caused by intoxication". *Holland, supra,* 39. This remedial purpose requires a liberal interpretation of the intent embraced in the statute.

MCLA 436.22 reads, in pertinent part, as follows:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by a visibly intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, and the sale is proven to be a proximate cause of the injury or death, shall have a right of action in his or her name against the person who shall by such selling, or giving of any such liquor have caused or contributed to the intoxication of said person or persons."

Nowhere does the statute express a limitation to tavern owners. The language "selling, *giving* or furnishing" strongly implies the contrary. Further, the bonding provisions of the dramshop act embrace many others than retailers (tavern owners); also included are manufacturers, warehousemen, distributors, and "specially designated" merchants. The failure of the bonding section to recite "rental hall proprietors" does not affect our inquiry. The dramshop act can be read inclusively or exclusively: for example, *Behnke, supra,* 221, emphasized that "[t]he statute makes no provision for holding private individuals liable"; conversely, the

statute makes no provision for excluding these individuals from liability.

Michigan's dramshop statute is limited to "unlawful" transactions, *i.e.,* "selling, giving or furnishing" alcohol to "a visibly intoxicated person". Since the act applies only to illegal transactions, it is reasonable to assume that the Legislature intended to include persons other than licensed vendors.

We need not go so far as to assault the general rule (as expressed in *LeGault, Behnke* and *Lover)* against liability for private individuals who furnish intoxicants without pecuniary gain for social courtesy. In this instance, the defendants Alcamo's actively participated in providing and dispensing alcoholic beverages for a financial consideration. It is sufficient that Alcamo's charged a fee as service charge for setting up the keg beer and providing the waiter/bartender. We are not disposed to make fine distinctions between whether Alcamo's fee was a generalized one or was particularized for each subservice (*i.e.,* food, waiter, etc.), or whether the fee was paid before or after the party. Similarly insignificant for our purposes is any question of whether the hosts "sold" the drinks to Bieniek (contrary to the lease). We conclude that the proper liberal construction of those encompassed by this remedial statute will necessarily include at a minimum all "persons" who actively participate in providing alcoholic beverages for a commercial remuneration.

We expressly disavow any implication that this opinion stands for the principle that private hosts who furnish intoxicants without pecuniary gain for social courtesy may be considered as liable under the dramshop act. Neither do we consider the statute's applicability to rental hall proprietors

who do not actively assist in procuring alcoholic beverages for the renters of their facilities. We find that these facts are sufficient to bring these defendants, Alcamo's Holiday House and Alcamo's Hall, Inc., within the contemplation of the dram-shop act.

The grant of summary judgment in favor of defendants Alcamo's is reversed, and the cause is remanded for trial.

Costs to plaintiffs.